# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| MONTPELIER US INSURANCE CO., | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Case No.    1:13-cv-1956-TMP ) |
| CHARLOTTE HUBBARD, as the Personal Representative of the Estate of JARRED MICHAEL HUBBARD, deceased; CRYSTALL/STOVALL ENTERPRISES LLC, | ) ) ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION

This matter is before the court on the motion for summary judgment filed August 19, 2014, by plaintiff Montpelier US Insurance Company ("MUSIC"). (Doc. 27).   Defendant Charlotte Hubbard has filed a response in opposition to the motion.  (Doc. 29).[1]   Plaintiff has filed a reply.   (Doc. 31).      Having considered all of the arguments and evidence submitted by the parties, the court finds that the motion for summary judgment is due to be granted.   The parties have consented to the dispositive jurisdiction of the magistrate judge pursuant to 28 U.S.C. § 636(c).

---

[1] The corporate defendant, Crystall/Stovall Enterprises LLC., has not filed any response.

## SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Celotex, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." Id. at 323.

Once the moving party has met his burden, Rule 56 "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting former Fed. R. Civ. P. 56(e)).

The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. Celotex, 477 U.S. at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

After the nonmoving party has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The substantive law will identify which facts are material and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52; see also Bill Johnson's Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 745 n.11 (1983). However, the nonmoving party "must do more than show that

there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. <u>Anderson</u>, 477 U.S. at 249 (citations omitted); <u>accord</u> <u>Spence v. Zimmerman</u>, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. <u>Anderson</u>, 477 U.S. at 254; <u>Cottle v. Storer Communication, Inc.</u>, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor. <u>Anderson</u>, 477 U.S. at 255. The non-movant need not be given the benefit of every inference but only of every reasonable inference. <u>Brown v. City of Clewiston</u>, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## UNDISPUTED FACTS

Viewing the evidence in the light most favorable to the nonmoving defendants, the court finds the following facts to be undisputed for purposes of evaluating the motion for summary judgment:

MUSIC issued a commercial general liability policy of insurance to Defendant Crystal Stovall Enterprises LLC[2] with effective dates of March 17, 2011, to March 17, 2012 ("the Policy"). (Doc. 1-2). Crystal Stovall is the insured under the Policy, which provides, in pertinent part:

> **1.  Insuring Agreement**
>
> a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. ....
>
> b.  This insurance applies to "bodily injury" and "property damage" only if:
>
> (1)  The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory';
>
> (2)  The "bodily injury" or "property damage" occurs during the policy period; ...
>
> \* \* \* \*

---

[2] The answer filed by Crystal Stovall, and the policy itself, spell Crystal with only one "l" and deletes the slash mark in the company name. The instant Complaint, however, lists the name as "Crystall/Stovall." The defendant will be referred to herein as Crystal Stovall.

**ASSAULT AND BATTERY EXCLUSION**

> This policy does not apply to "bodily injury," "personal injury," or "property damage" arising out of assault and/or battery or out of any act or omission in connection with the prevention or suppression of such acts, including the failure to warn, train or supervise, whether caused by or at the instigation or direction of the Insured, his employees, patrons or any other person.

(Policy, Doc. 1-2, pp. 15, 19).[3] The policy defines the term "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Doc. 1-2, p. 32).[4]

On August 1, 2013, Charlotte Hubbard, as the personal representative of the estate of her deceased son, filed an action in the Circuit Court of Calhoun County, Alabama, alleging that her son, Jarred Michael Hubbard, suffered serious injury and died as a result of a fight that occurred in the parking lot of a nightclub in Anniston, Alabama, on August 29, 2011. Ms. Hubbard named as defendants The Office LLC, which is the entity that ran the nightclub, and Crystal Stovall, the entity that owned,

---

[3] The Policy also includes an exclusion for "liquor liability," which excludes coverage for "bodily injury" and "property damage" for which the insured may be held liable by reason of: (1) Causing or contributing to the intoxication of any person...." (Doc. 1-2 p. 20). For reasons that are not clear to the court, however, plaintiff does not cite to or rely upon this exclusion in its motion or brief, and the court does not otherwise express an opinion about the applicability of that exclusion.

[4] The plaintiff does not provide the court with page numbers at which to find any of the policy provisions on which it relies. Plaintiff refers to the definition, contained within the 73-page policy, as appearing at "Section 5 (18)" with no specific page. (Doc. 27, p. 6). The only definition the court locates within the document, however, is at "Section V (13)" on page 32.

managed, leased or rented the real property on which the nightclub operated. She alleged that the defendants in that action negligently or wantonly failed to prevent the assault on her son.

The underlying complaint alleged that the decedent was at the nightclub as a patron. He got into a physical altercation with another patron, Justin Crenshaw. Both Hubbard and Crenshaw were highly intoxicated. They remained at the nightclub, and apparently continued to be served alcohol, until after it closed at 2:00 a.m. Shortly after 2:00 a.m., Hubbard left the nightclub and was assaulted in the parking lot by Crenshaw. Hubbard was knocked to the ground and struck in the head; he died three days later from an intracranial bleed. (Doc. 30, pp. 5-6).

On October 23, 2013, MUSIC filed this action, seeking a declaratory judgment that the Policy imposes no duty to defend or indemnify Crystal Stovall for the damages alleged by Ms. Hubbard, asserting that the claims are specifically excluded by the assault and battery exclusion.[5] In response, Ms. Hubbard argues that she is not asserting any claim for assault and/or battery, making the exclusion "irrelevant" (doc. 30, pp. 8-10), and that the case relied upon by the movant is distinguishable (doc. 30

---

[5] MUSIC further suggests that no coverage exists because the incident that gave rise to the injuries was not an "occurrence" within the Policy definition. The plaintiff simply notes that such argument could be made, but does not rely upon it as a ground for summary judgment; accordingly the court does not issue any opinion as to whether the assault was an "occurrence" under the policy.

pp. 10-12). Ms. Hubbard further asserts that the contract should be liberally construed in favor of coverage.

## DISCUSSION

The issue before this court is whether there exists a genuine issue of material fact regarding whether MUSIC must defend and indemnify in the underlying lawsuit filed by Ms. Hubbard against The Office and Crystal Stovall.  Under Alabama law, the burden of proving that coverage exists under a policy of insurance rests with the insured, but the burden of proving an exclusion applies to bar coverage lies with the insurer.  See  Jordan v. National Accidental Ins. Underwriters, Inc., 922 F.2d 732, 735 (11th Cir. 1991), and cases cited therein.  See also Pennsylvania Nat. Mut. Cas. Ins. Co. v. Roberts Bros., Inc., 550 F. Supp. 2d 1295 (S.D. Ala. 2008).  Under Alabama law, the general rules of contract law govern an insurance contract, and the policy must be enforced as written if the language of the policy is unambiguous. Safeway Ins. Co. of Ala., Inc., v. Herrera, 912 So. 2d 1140, 1143 (Ala. 2005). Whether a contract term is ambiguous is a question of law, and to the extent that a term is ambiguous, it must be construed against the insurer.  Safeway, 912 So. 2d at 1143.  Furthermore, policies are to be liberally construed in favor of the insured. Tanner v. State Farm Fire & Cas. Co., 874 So. 2d 1058, 1065 (Ala. 2003), quoting

Pacific Indem. Co. v. Run-A-Ford Co., 161 So.2d 789, 795 (Ala. 1964).  However, when a contract is unambiguous, the court must enforce the policy as written. Lambert v. Coregis Ins. Co., Inc., 950 So. 2d 1156.  An insured cannot avoid the plain meaning of a term of the insurance policy by "unduly strain[ing]" the language. Woodall v. Alfa Mut. Ins. Co., 658 So. 2d 369, 371 (Ala. 1995). The Alabama Supreme Court noted:

> "[I]nsurance companies are entitled to have their policy contracts enforced as written, rather than risking their terms either to judicial interpretation or the use of straining language, and the fact that different parties contend for different constructions does not mean that the disputed language is ambiguous."

 Woodall, 658 So. 2d at 371, quoting Gregory v. Western World Ins. Co., 481 So.2d 878, 881 (Ala.1985) (citation omitted).

MUSIC asserts that the Policy specifically excludes coverage of the claims alleged in the underlying lawsuit.  The insurer argues that the exclusion is unambiguous and enforceable and precludes any duty to defend or indemnify the insureds with respect to Ms. Hubbard's claims.  In support of that argument, the plaintiff points to Admiral Insurance Co. v. Price-Williams, 129 So. 3d 991 (Ala. 2013).  In that case, Price-Williams was attacked and beaten at a fraternity house.

He sued the national fraternity, the local chapter of the fraternity,[6] two fraternity officers alleged to have engaged in the attack, and a third man, not affiliated with the fraternity, who also was alleged to have joined in the beating. His claims against the two officers included negligence and/or wantonness in failing to prevent the assault by failing to enforce the fraternity's "risk management program." 129 So. 3d at 992. The officers apparently never appeared in the case; the two fraternal organizations retained their own counsel until Admiral took over the defense. Id. The two officers also were criminally charged for their participation in the assault. Id. at n. 3. The trial court granted summary judgment in favor of the national fraternity, entered a default judgment against the two officers, and proceeded to try the claims against the local chapter. Id. at 993. The fraternity retained its own counsel and provided the defense early in the action pursuant to a self-insured retention clause.[7] Once the expenses reached the threshold necessary to trigger the insurer's duty to pay, Admiral assumed the defense of the fraternity. No defense or indemnity for the two officers was sought. Id. The default judgment was apparently set aside, and the case proceeded to trial. After closing arguments, the fraternity reached a settlement

---

[6] The plaintiff sued both the national fraternity, Kappa Sigma, and the local chapter, Kappa Nu. The insurer apparently defended and indemnified both Kappa Sigma and Kappa Nu.

[7] The court defined a self-insured retention clause as one that requires the insured to pay some "amount of an otherwise-covered loss ... that usu[ally] must be paid before the insurer will pay benefits." 129 So. 3d at 993, n. 4.

agreement with Price-Williams. The court entered a judgment against the two officers, finding they acted negligently and wantonly. The court awarded Price-Williams $500,000 in compensatory damages, and $750,000 in punitive damages. 129 So. 3d at 994.

Price-Williams then brought a separate action, pursuant to Alabama Code Section 27-23-2, seeking to hold Admiral liable to indemnify the two officers, asserting that they also should be deemed insureds under the commercial general liability policy held by the fraternity. 129 So. 3d at 995. The trial court found that the two officers' conduct in failing to implement the "risk management" policy was covered under the policy, although their conduct in participating in the assault was excluded under the assault and battery exclusion. Id. at 995-96. Admiral appealed, and the Supreme Court addressed the question at issue here: whether the assault and battery exclusion is unambiguous.

In the case relied upon by MUSIC, the Alabama Supreme Court ultimately determined that the issue "hinge[d] solely on the application of unambiguous language" in the policy which read: "This insurance does not apply to 'bodily injury,' 'property damage,' 'personal injury,' or 'advertising injury' arising out of any act of assault and/or battery by any insured or additional insured." 129 So.3d at 996. Defendant attempts to distinguish the clear holding in Price-Williams by arguing that

11

the case was a direct action brought by the injured party who "stood in the shoes" of the insureds. But the same can be said of the instant case. Ms. Hubbard is not an "insured" under the terms of the Policy; she is sued in this declaratory judgment action because she is a plaintiff against the insureds in the underlying tort action, and therefore a necessary party. In a real sense, she also is "standing in the shoes" of the insureds in this action because she wants to preserve insurance coverage of her claim against the insureds in the underlying action. She is procedurally in the same posture as a plaintiff who has obtained a judgment against the insureds and then proceeds in a direct action against the insurer. Thus, there is no real distinction between Price-Williams and this case, at least as argued by Ms. Hubbard.

Even if a distinction did exist due to the direct-action posture of the Price-Williams case, the ultimate issue decided by the appellate court was whether, under Alabama law, the language of an assault-and-battery exclusion in a commercial general liability policy was unambiguous and enforceable. The answer, quite simply, was "yes." With language very similar to the language in the instant case, Price-Williams involved the more complicated issue of an exclusion tailored specifically to exclude only an assault and/or battery committed by persons otherwise insured. Even so, the lack of ambiguity and the enforceability of such the exclusion was clearly analogous. The policy language at issue here, is substantially similar and even broader,

excluding insurance coverage for "'personal injury'… arising out of assault and/or battery or out of any act or *omission in connection with the prevention or suppression of such acts*, including the failure to warn, train or supervise, whether *caused by* or at the instigation or direction of the Insured, his employees, *patrons or any other person*." (Emphasis added). Although it is true that Ms. Hubbard does not allege in her tort suit that The Office or Crystal Stovall committed an assault and battery on her son, the fact remains that his "personal injuries" and death arose out of an assault and battery by a "patron." All of her legal claims against the insureds merely allege negligence or wantonness in failing to "prevent[] or suppress[]" the attack on her son by another patron, Crenshaw, and these are precisely the types of claims the assault and battery exclusion was intended to exclude from overage. For declaratory judgment purposes, the coverage question is not whether Ms. Hubbard contends the *insureds* attacked her son, but whether his personal injuries were the product of an assault and battery for which the insureds might be liable. The language of the exclusion makes plain that it excludes coverage even where the assault and battery is "caused by… patrons or any other person." Because even Ms. Hubbard concedes that the personal injury suffered by her son arose from an assault and battery, the exclusion clearly and unambiguously applies.

This is reading of the exclusion is made clear by the authority cited by the Alabama Supreme Court for its holding in Price-Williams. The holding in

13

Price-Williams was derived from another case construing a clause almost identical to the language in the MUSIC policy.   In Gregory v. Western World Insurance Co., Inc., 481 So. 2d 878 (Ala. 1985), the Alabama Supreme Court held that the exclusion precluded coverage for the injuries the plaintiff, the patron of a bar, sustained after being struck in a bar fight with another patron.  The plaintiff sued the owners of the bar and other defendants, alleging, inter alia, that the premises were negligently maintained.  The court found the exclusion for "bodily injury ... arising out of an assault and battery ... whether caused by or at the instigation or direction of ... patrons or any other person" was applicable and unambiguous.   481 So. 2d at 881.[8]

Accordingly, the court must conclude that MUSIC's policy, which excludes from coverage "'bodily injury,' 'personal injury,' or 'property damage' arising out of assault and/or battery", is unambiguous and enforceable.   MUSIC is therefore entitled to a declaratory judgment in its favor that there exists no coverage for the claims asserted in the underlying lawsuit.

---

[8]   The court finds only one case that suggests, at least on the surface, that such an exclusion could be deemed ambiguous, Acceptance Insurance Co. v. Brown, 832 So. 2d 1 (Ala. 2001). However, that case involved injuries arising from a shooting on the premises of the insured's gas station, and there was a jury question as to whether the shooting could have been an accident and not an intentional assault.   There is no issue of fact concerning the incidents giving rise to the injuries in Price-Williams and in the instant case.  Ms. Hubbard herself describes Crenshaw's conduct as an "attack."

## **CONCLUSION**

For all of the reasons set forth above, the motion for summary judgment filed by plaintiff MUSIC is due to be and hereby is GRANTED. A separate order will be entered declaring that MUSIC owes no duty to defend or indemnify insured Crystall/Stovall Enterprises LLC., or other insureds under the Policy, with respect to the claims alleged against them by defendant Hubbard as the personal representative of the estate of Jarred Michael Hubbard, deceased.

Dated the 6th day of March, 2015.

T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE